UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

CORNELIA FIFTH AVENUE LLC and
CORNELIA ESSENTIALS, LLC,

          Plaintiff,

   v.

TIGERNET SYSTEMS, INC.,

          Defendant.

-------------------------------------------------------------X

JUDGE SULLIVAN

**COMPLAINT**

Case No. 07 CV 11529

DEC 2 6 2007
U.S.D.C. S.D., N.Y.
CASHIERS

      Plaintiffs Cornelia Fifth Avenue LLC and Cornelia Essentials, LLC (collectively "Cornelia" or "Plaintiffs"), by their attorneys, Olshan Grundman Frome Rosenzweig & Wolosky LLP, as and for their Complaint, respectfully allege as follows:

### NATURE OF THE ACTION

    1.    This is an action for breach of contract, fraud and computer tampering under the Federal Computer Fraud and Abuse Act ("CFAA"). Plaintiffs retained defendant to design, build, implement and install a computer system for plaintiffs' day spa. Plaintiffs trusted defendant to advise and counsel them as to what plaintiffs needed for their system. Instead of honoring its contractual obligations in good faith, defendant designed a computer system that was faulty, defective, unduly overbuilt and complex. This overblown system repeatedly and consistently crashed and was unusable.

    2.    Plaintiffs have since discovered that defendant sold plaintiffs excessive and unnecessary computer equipment, and that defendant did so because it earned a commission and/or profit for each such sale, a material fact which was concealed by defendant. Plaintiffs have also learned that their computer network continually crashed because defendant designed

and installed a faulty system, with software configured improperly, firewall protections lacking, and without the back-up protection that plaintiffs required. Plaintiffs believe that defendant did so intentionally in order to profit from the faulty system by lining its pockets with the hourly fees earned through the parties' service agreement every time the system crashed.

3. Possibly defendant's worst transgression, however, is that after plaintiffs terminated the relationship, upon information and belief, defendant hacked into plaintiffs' computer system through a back-door channel defendant had created, shut down plaintiffs' servers, changed passwords, and deleted files in an attempt to delete plaintiffs' logs of the repeated system failures and in an apparent act of retribution.

## THE PARTIES

4. Plaintiff Cornelia Fifth Avenue, LLC is a limited liability company organized and existing under the laws of New York, having an office and place of business in located at 663 Fifth Avenue, New York, New York 10022.

5. Plaintiff Cornelia Essentials, LLC is a limited liability company organized and existing under the laws of New York, having an office and place of business in located at 663 Fifth Avenue, New York, New York 10022.

6. Upon information and belief, defendant TigerNet Systems, Inc. (hereinafter "TigerNet") is a foreign corporation organized and existing under the laws of State of Connecticut, having its principal office and place of business at 400 Main Street, Stamford, Connecticut 06901.

## JURISDICTION AND VENUE

7. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as plaintiffs are incorporated in New York and their primary place of business is in New

York, defendant TigerNet is incorporated in Connecticut and its primary place of business is located in Connecticut, and the amount in controversy exceeds seventy five thousand dollars ($75,000), exclusive of interest and costs.

8. This Court also has federal question jurisdiction as this action involves claims arising under the Computer Fraud and Abuse Act ("CFAA") of the United States of America. Thus, this Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

9. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391, as this is the judicial district in which a substantial part of the events giving rise to the claims occurred.

## FACTUAL ALLEGATIONS

The Parties and Relevant Background

10. Cornelia owns and operates the Cornelia Day Spa, one of the Country's premier day spas. Located in the heart of Manhattan, the Cornelia Day Spa caters to high-end clientele, and has been ranked as one of the top day spas in the World. The Spa opened its doors in or about January 2005 at 663 Fifth Avenue.

11. TigerNet is engaged in the business of providing computer technology services.

12. In early 2004, prior to building out the space for the Spa, Cornelia contacted TigerNet to discuss retaining TigerNet's services to design, build, and set-up the computer and network system for the Spa.

13. On or about April 21, 2004, TigerNet provided Cornelia with a "New Network Installation Proposal Overview" (the "Proposal Agreement"). The Proposal Agreement outlined in detail TigerNet's proposal for a new computer network installation for Cornelia's Day Spa.

The Objectives, as outlined in the Proposal Agreement, provided for TigerNet to plan, design, implement and install a computer network system which would:

> [P]rovide Cornelia with a comprehensive computing environment that will be rock solid from an operational production perspective as well as a fast and responsive computing environment such that Cornelia's customers do not need to wait for the system. The system is designed to be robust with some elements of redundancy to ensure no downtime and maintain the Spa's objective of an elite high customer service environment.

14. In or about May 2004, Cornelia entered into a Master Services Agreement with TigerNet, pursuant to which TigerNet was to provide technology support service to Cornelia on an hourly fee basis.

15. In or about June, 2006, Cornelia leased back-office space for the Spa at 666 Fifth Avenue, New York, New York. TigerNet designed, implemented and installed the network and computer system for this office space as well.

16. In October 2006, the parties entered into an updated Support Agreement, which expanded and modified the terms by which TigerNet would provide technology support service to Cornelia on an hourly fee basis (collectively the "Service Agreements").

TigerNet Sold Cornelia Excessive and Unnecessary Equipment
While Concealing the Commissions and/or Profits it Earned

17. Pursuant to the Proposal Agreement, TigerNet designed, implemented and installed the entire computer system for the Spa and its back offices. This included selecting, purchasing and installing all hardware for the system, including without limitation, the computers, servers, wires and connectors, and selecting, purchasing and installing all software.

18. From the very beginning it became clear that the system TigerNet designed and installed was faulty, ineffectual, and fraught with problems. Indeed, commencing immediately after TigerNet set up the system, the computer system began to repeatedly and consistently crash.

19. In or about June 2007, after nearly three years of consistent crashes and system and network errors, Cornelia hired L&D Computer ("L&D") to undertake an audit of the existing computer infrastructure set up by TigerNet, including the hardware and software.

20. L&D's audit revealed that the network, as designed and installed by TigerNet, is unnecessarily complex and overbuilt, was not configured properly, was not set up according to Cornelia's requests and needs, and has many unnecessary redundancies that are poorly designed.

21. Specifically, TigerNet sold Cornelia a litany of hardware, software and components that Cornelia did not need. For example, at TigerNet's instructions, Cornelia purchased from TigerNet and installed 14 servers for approximately 21 computers. L&D has advised that this is two to three times the number of servers needed for this number of computers, is unduly and extremely excessive, and unnecessarily complicates the system.

22. In addition, the computers TigerNet purchased for each of the spa treatment rooms were unnecessarily complex and overbuilt. TigerNet also purchased for Cornelia a network connector known as a "Fat Pipe" far in excess of Cornelia's needs, and purchased for Cornelia two separate back-up software licenses, when only one is necessary and appropriate.

23. Cornelia has recently learned that, upon information and belief, the reason that TigerNet greatly oversupplied and over-purchased for Cornelia was that defendant made commissions and/or profits on the hardware and software it purchased for Cornelia. TigerNet sold Cornelia hundreds of thousands of dollars of machinery and equipment that Cornelia did not need to supplement and line defendant's own pockets.

24. As part of the scope of Cornelia's retention of TigerNet, TigerNet was to provide its counsel and advice as to the quantity, quality and nature of each and every component of Cornelia's computer network system. Pursuant to the Proposal Agreement, TigerNet was

contractually obligated to assess Cornelia's needs, and design and implement a computer network system to meet those needs.

25. Cornelia reasonably relied upon the advice and counsel of TigerNet, and unquestioningly purchased from TigerNet the hardware, software and components recommended by TigerNet.

26. Through all this, defendant intentionally and fraudulently concealed that TigerNet was a vendor for, and received a cut from, each and every piece of hardware and software that it sold to Cornelia. Defendant further fraudulently concealed that it was charging Cornelia excessive rates for each item it sold to Cornelia, and that defendant was generating outrageous profits on each such purchase.

27. Cornelia reasonably relied upon TigerNet's recommendations to its detriment, and purchased unduly excessive, unnecessarily complicated and ineffectual hardware, software and components, while defendant was lining their pockets with the commissions derived from these purchases.

TigerNet Designed and Installed a Faulty and Defective Computer Network System and Profited from its Own Failures by Charging Cornelia Hourly Service Rates

28. L&D's audit further revealed that TigerNet designed and installed a faulty, defective and ineffectual computer network system.

29. For example, prior to setting up the system, Cornelia had advised TigerNet that it wanted its main operating system to be a software package entitled Spa Soft, which is the leading operating system software for spas. Cornelia repeatedly advised TigerNet that it was imperative that Spa Soft never be down or disabled, and that a sufficient back-up system be designed and included as part of the system to ensure that this never occurred.

30. Despite these very clear instructions, Spa Soft repeatedly and consistently crashed and failed, and Cornelia's computer system was often and repeatedly down.

31. Cornelia has learned that the reason Spa Soft kept crashing is that TigerNet installed the software improperly, and failed to conduct the appropriate due diligence and corrective measures to fix the problems.

32. Specifically, TigerNet configured and implemented the software in a clustered environment, notwithstanding that Spa Soft does not support clustering, as TigerNet well knew.

33. Indeed, prior to installation, Spa Soft informed TigerNet in writing that a clustered environment is not recommended, and reiterated this fact to TigerNet over and over again when TigerNet contacted Spa Soft to troubleshoot the repeated problems. Cornelia knew none of this.

34. Moreover, Spa Soft strongly recommended that TigerNet change Cornelia's network configuration to adhere to Spa Soft's recommended specifications. TigerNet failed and refused to do so, allowing the problems to continue.

35. Upon information and belief, TigerNet intentionally set up a faulty and defective operating network system, and failed and refused to change the configuration of Spa Soft, so that it could continue to line its pockets with the hourly fees it earned from the Service Agreements for service calls every time Spa Soft crashed, which it regularly did.

36. In addition to the disastrous Spa Soft set-up, L&D's audit revealed that TigerNet committed numerous other serious errors in designing, installing and configuring Cornelia's network.

37. For example, TigerNet configured the system with two separate connections to the Internet with the network connector as a single point of failure, which could, and did on multiple occasions, bring down Cornelia's entire network.

38. In addition, TigerNet installed all servers in one physical location, though best practices require that the servers be in two different physical locations in order to effectively provide back-up capabilities. The system, therefore, is not only excessive, but fails to offer the back-up protection which Cornelia specifically requested.

39. Further, though the Proposal Agreement expressly provides that a CheckPoint firewall was to be installed to ensure that the Network is "protected from external hackers," TigerNet set up the system with the remote access shut-off *outside* the firewall protection, which gives TigerNet back-door access to Cornelia's confidential information.

40. L&D also informed Cornelia that the back-up system designed by TigerNet is faulty, as it does not include a procedure for rotating the back-up tapes to an off-site storage location, to secure the tapes in the event of a fire or other physical disaster.

41. In addition, as part of the design phase, TigerNet designed a dedicated room to house all aggregate network wiring and components  L&D's audit revealed that the overall workmanship of the physical plant where the computer equipment is housed is the single worst installation they have seen in their forty years of IT experience. The networking cabling within the server room, the set up of the machines within the equipment racks, and the space utilization within the room, is terrible, and has greatly contributed to the problems with the system.

42. Cornelia has paid TigerNet nearly $1 million dollars for goods and services estimated by TigerNet to cost approximately $300,000. Cornelia has not only suffered in the excessive overpayments made to TigerNet, but in the hours upon hours of manpower dedicated

to attempt to fix the problems, including, but not limited to, monies paid to L&D to audit and fix the various and repeated problems with the network as created by TigerNet.

43. In or about July 2007, Cornelia advised TigerNet that it was terminating the Services Agreement, and demanded that TigerNet give Cornelia all licenses, passwords and serial numbers for the hardware and software purchased for Cornelia. TigerNet refused. Cornelia has undertaken substantial efforts to obtain these items and information itself, only to learn that TigerNet named itself as the owner of the software licenses that it purchased for Cornelia, and established passwords for those licenses, which has rendered it difficult, expensive and time consuming for Cornelia to reset.

TigerNet Unlawfully Hacked into Cornelia's Computer System

44. In or about early July 2007, after Cornelia terminated TigerNet, L&D changed the administrative global password for the system so that TigerNet could no longer access the system. L&D removed TigerNet's name as an administrator on the system and substituted it with the names of Cornelia's executives.

45. On Saturday, July 14, 2007, in the early evening, Cornelia's system crashed. Upon information and belief, this occurred because, despite Cornelia's efforts, TigerNet hacked into the system.

46. Cornelia's system was accessed remotely, and its servers were shut down. Cornelia's executives' names were removed as administrators, and their access to the network system was eliminated.

47. The logs of problems were deleted from Cornelia's Gateway and Main File servers, and logs from Cornelia's back-up servers were deleted as well.

48. Upon information and belief, TigerNet hacked into Cornelia's system through the back-door access it set up for itself to attempt to erase the evidence of the repeated problems and failures of the system it designed and created, and further did so as retribution for Cornelia terminating what was a very lucrative arrangement for TigerNet.

49. Cornelia suffered significant economic loss as a result of TigerNet's break-in, including costs associated with interruptions and slow-downs in Spa services, inability to book and checkout appointments, lost open ticket items, interrupted credit card transactions, replacing equipment, and L&D's time to get the system up and running again.

## FIRST CLAIM FOR RELIEF
### Breach of Contract

50. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 49 as if set forth herein.

51. Defendant TigerNet entered into the Proposal Agreement with Cornelia, pursuant to which it was to design, implement and install a computer network system for Cornelia's Day Spa that would provide Cornelia with a comprehensive computing environment that will be rock solid from an operational production perspective.

52. Despite the clear operational guidelines, the system designed, built and installed by TigerNet was ineffectual, excessive, faulty and flawed from the beginning.

53. As a result, Cornelia has been damaged in an amount not yet known, but believed to be in excess of $500,000.

## SECOND CLAIM FOR RELIEF
### Breach of Contract

54. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 49 as if set forth herein.

55. Defendant TigerNet entered into the Services Agreements with Cornelia, pursuant to which TigerNet was to provide service to Cornelia for the computer system based upon the hourly rates as set forth in the agreements.

56. The service provided by TigerNet pursuant to the Service Agreements was faulty, defective and ineffectual.

57. As a result, Cornelia has been damaged in an amount not yet known, but believed to be in excess of $500,000.

### THIRD CLAIM FOR RELIEF
Fraud

58. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 49 as if set forth herein.

59. As part of the scope of Cornelia's retention of TigerNet, TigerNet was contractually obligated to provide its counsel and advice to Cornelia in determining and advising Cornelia as to the quantity, quality and nature of each and every component of its computer network system. Pursuant to the Proposal Agreement, TigerNet was to assess Cornelia's needs, and design and implement a computer network system to meet those needs.

60. By reason of Cornelia and TigerNet's contractual relationship, there existed between the parties a special relationship. TigerNet acted as Cornelia's computer expert, and Cornelia relied upon defendant's advice and counsel, and purchased the hardware, software and components recommended by TigerNet.

61. Through all this, defendant intentionally and fraudulently concealed that it was a vendor for, and received a cut for, each and every piece of hardware, software, license and component that it sold to Cornelia.

11

556327-8

62. Defendant further fraudulently concealed that it was charging Cornelia excessive rates for each and every piece of hardware, software, license and component that it sold to Cornelia, and that defendant was generating outrageous profits on each such purchase.

63. Cornelia reasonably relied upon defendant's recommendations to its detriment, and purchased unduly excessive, unnecessarily complicated and ineffectual hardware, software and components, while defendant was lining its pockets with the commissions and profits derived from these purchases.

64. As a result, Cornelia has been damaged in an amount not yet known, but believed to be in excess of $750,000.

## FOURTH CLAIM FOR RELIEF
### Computer Tampering

65. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 49 as if set forth herein.

66. Upon information and belief, defendant knowingly, wrongfully, intentionally and unlawfully accessed Cornelia's protected computer service without authorization.

67. Upon information and belief, defendant, having no lawful right to do so, intentionally altered and/or destroyed Cornelia's computer data within the meaning of the Federal Computer Fraud and Abuse Act, by, among other things, shutting down Cornelia's servers, changing administrative passwords, and deleting Cornelia's logs and files.

68. By this conduct, defendant has caused Cornelia to suffer economic damage in an amount far in excess of $5,000.

556327-8

## FOURTH CLAIM FOR RELIEF
### Trespass

69. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 49 above as if fully set forth herein.

70. Defendant knowingly, wrongfully and unlawfully accessed and trespassed on Cornelia's computer service without authorization.

71. As a result, Cornelia has been damaged in an amount not yet known, to be determined at trial.

## FIFTH CLAIM FOR RELIEF
### Breach of the Covenant of Good Faith and Fair Dealing

72. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 49 as if set forth herein.

73. TigerNet entered into the Proposal Agreement with Cornelia, pursuant to which it was to design, implement and install a computer network system for Cornelia's Day Spa that would provide Cornelia with a comprehensive computing environment that will be rock solid from an operational production perspective.

74. TigerNet entered into the Services Agreements with Cornelia, pursuant to which TigerNet was to provide service to Cornelia for the computer system based upon the hourly rates as set forth in the agreements.

75. Implied in the Proposal Agreement and the Services Agreements was the covenant that TigerNet would perform its obligations thereunder in good faith, and that TigerNet deal fairly with Cornelia.

76. TigerNet breached the covenant of good faith and fair dealing by, amongst other things, designing, building and installing a computer system that was ineffectual, excessive,

faulty and flawed, profiting from this by charging Cornelia hourly rates for each service call that was needed to correct the repeated problems, and concealing from Cornelia that defendant received commissions and/or profits on each piece of hardware and software that TigerNet sold to Cornelia.

    77.    As a result, Cornelia has been damaged in an amount not yet known, but believed to be in excess of $500,000.

**WHEREFORE**, Plaintiffs pray for the following relief and an Order and judgment from this Court:

    A.    Awarding plaintiffs compensatory damages for defendant's breach of the Proposal Agreement in an amount to be determined at trial, but believed to exceed $500,000;

    B.    Awarding plaintiffs compensatory damages for defendant TigerNet's breach of the Service Agreements in an amount to be determined at trial, but believed to exceed $500,000;

    C.    Awarding plaintiffs compensatory damages for defendant's fraudulent concealment in an amount to be determined at trial, but believed to exceed $750,000;

    D.    Awarding plaintiffs compensatory damages for defendant's violation of the Computer Fraud and Abuse Act in an amount to be determined at trial, but believed to exceed $5,000;

    E.    Awarding plaintiffs compensatory damages for defendant's trespass in an amount to be determined at trial;

    F.    Awarding plaintiffs compensatory damages for defendant's breach of the covenant of good faith and fair dealing implied in the Service Agreements in an amount to be determined at trial, but believed to exceed $500,000; and

556327-8

   G. Granting plaintiff its attorney's fees, and such other and further relief as the Court deems just and proper.

Dated: New, York, New York
   December 20, 2007

                 OLSHAN GRUNDMAN FROME
                 ROSENZWEIG & WOLOSKY LLP

                 By: _____
                  Randy M. Friedberg (RF 8645)
                  Lori Marks-Esterman (LME 2841)
                  Attorneys for Plaintiffs
                  65 East 55th Street
                  New York, New York 10022
                  (212) 451-2300